## THE CHICAGO FIRE AND MARINE INSURANCE COMPANY, Appellant, *v.* MARGARET M. KEIRON, Appellee.

### APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

A certificate of deposit payable in "Illinois currency," cannot be satisfied by depreciated paper; it must be met by bills passing in the locality in the place of coin. It might be otherwise if the certificate had been made payable in Illinois bank paper.

The words "Illinois currency" mean something different from gold or silver, or their equivalents, and may be used in reference to things of different values,

Chicago Fire and Marine Insurance Co. *v.* Keiron.

when applied to the uses of traffic; and on enforcing a contract using these words, it is proper to show what meaning the parties intended to give them in their use of them. CATON, C. J.

THIS was an action of assumpsit upon an instrument commonly called a certificate of deposit, which is set out in the record, as follows:

"No. 10,773. STATE OF ILLINOIS,
"*Chicago Marine and Fire Insurance Company*,
*Chicago, April 23, 1861.*

"John Woollacott, Esq., has deposited in this office three hundred dollars, Illinois currency, payable in like funds to his order, on return of this certificate.

"$300. HAMILTON B. DOX, *Secretary.*
"*Registered.* SAMUEL S. ROGERS, *Assistant Secretary.*"
"EUGENE C. LONG."

On said certificate were the following indorsements: "Pay Margaret M. Keiron, or order. John Woollacott."

The declaration contained six special counts upon this certificate of deposit, and the common money counts.

Plea, the general issue.

Trial by jury, and verdict for plaintiff for $298.10. Judgment on the verdict.

Motion for new trial by defendant overruled, and exception.

The bill of exceptions shows, that on the trial plaintiff offered in evidence the certificate of deposit described in her declaration, with the indorsements thereon.

The plaintiff then called a witness, who testified as follows: I called on defendant at its banking house in Chicago, June 13th, 1861, the day before this suit was begun, with the certificate of deposit, or instrument sued on, and offering it to H. B. Dox, the cashier of defendant, demanded payment of it. He said they would pay it in Illinois currency. I asked him what kind of Illinois currency, and he said, such as they had on hand. I asked what it was worth. He said, fifty or sixty cents on the dollar.

I then spoke to Mr. Scammon, the president of defendant. I asked him if he could not pay this certificate, remarking, at the same time, that it was a small amount, or something to that effect, and he said they could do no better with it than with any others, although it was a small one, and that he could make me no better offer than Mr. Dox had done. I refused these offers. I did not see the bills. No specific bills were offered.

I asked for current funds. I don't think I designated any particular funds, but only what would pass current. May

have demanded gold, but think current funds. I know Dox familiarly and well, and showed him the certificate.

I made no compromise. I would have taken anything that would pass current, but when they offered me what would only pass at fifty or sixty cents, that ended it.

The testimony on the part of the defense, in reference to the value and condition of Illinois currency in this case, was much the same as that reported in this volume, in the case of the *Marine Bank* v. *Chandler et al., post.*

The plaintiff then asked for, and the court gave to the jury, the following instructions:

1. A deposit commonly signifies a bailment of property for custody, without compensation, the title remaining with the depositor, and the depositary acquiring no title in the thing deposited, but only a right to its mere possession and custody. Hence the depositor is entitled to a return of the specific chattel on demand, and to an action to recover its possession when wrongfully withheld. As a consequence of this principle, if the property is lost, stolen or destroyed, while in the custody of the depositary, and without gross and willful negligence on his part, the loss falls on the depositor.

2. But when the subject matter of the deposit or loan is money, wheat or other property, and it is delivered to the depositary for use or consumption, the law implies a contract to return not the identical thing deposited or lent, but the equivalent of the same kind, nature or quality. In such cases, the title to the thing deposited rests in the depositary *ipso facto*, and is at his risk. The only right of the depositor is to a return in kind or value, and this right is not impaired by reason of the subsequent loss or destruction of the property in the hands of the depositary.

3. Such is ordinarily the relation implied by law from the dealings between a banker and his customer, where no special agreement is made by them varying their rights. The money, checks or bills which may be the subject of the deposit, become the property of the bank, and the depositor becomes a creditor. If stolen, lost or destroyed, or if they become of no value by reason of subsequent depreciation, the bank must sustain the loss. The depositor's legal title in the deposit having passed by operation of law, his right is resolved into a mere *chose in action* or claim against the bank for the value of the deposit, usually fixed by the credit given, as in the case of an ordinary loan of money. Indeed, a general deposit with a bank is denominated a gratuitous loan, payable to the depositor on demand.

4. In this case, therefore, the first question for the jury to

consider, is, what was the nature of the relation arising out of the dealings between these parties, as disclosed by the evidence? Was it the ordinary relation of a customer with his banker? If so, then what was the subject matter of the deposit? Was it money, or currency, or something else? And first, as to the relation of banker and customer?

6. If this relation is found to have existed, the jury should next inquire into the nature and subject of the deposit. Was it money, or current bank bills, or depreciated bills of Illinois banks circulating at the time as money? If the latter, then were these bills received on deposit as money or currency, to be accounted for on demand in like current funds or money? Or were they received as depreciated bills *eo nomine*, upon an agreement, expressed or implied, that they should be accounted for in identically like bills of the Illinois banks, whether current or uncurrent at the time of demand? In determining this question, the jury should inquire into the course of dealing between the parties, the state and condition of the currency at the time the deposits were made, the nature and value of the deposits, and whether or not any express arrangement existed, regulating and fixing the basis of their mutual dealings with each other.

7. On this point, the court instructs the jury, that if they find, from the evidence, that the deposits were made in Illinois bank bills, passing current at the time, in all business transactions, as money, and as such, though known to be depreciated, were accepted and credited by defendant, without any agreement or understanding that the deposit or collection should be paid in like funds as those in which the deposit or collection was made, then the law implies a promise to pay in Illinois or other bank bills, current at the time of the demand, though the bills deposited were subject to a discount for specie when deposited, and subsequently became entirely discredited and greatly depreciated. Such a contract can only be discharged by the payment or tender of bank notes current at the time of demand, or their equivalent in money, and the measure of the plaintiff's damages in this case would be such value on the 13th of June, the time of demand, with interest thereon at date. And if no bank notes were then in circulation as money, the engagement became absolute for the payment of money. For where an amount of money is made payable in a particular thing, the contract can only be discharged in the identical description of property called for, or in money. Nothing else can be substituted.

To the giving of which instructions the defendant excepted.

The defendant then asked the court to give the following instructions :

1. If the jury believe, from the evidence, that the words " Illinois currency," in the certificate of deposit offered in evidence by the plaintiff, referred to and meant the bills issued by the banks created under the banking laws of Illinois, and that such bills were, at the time of the deposits, of a fluctuating and depreciated value as compared with coin, then the plaintiff is only entitled to recover the average value of such issues of Illinois banks, as were used as currency after the first day of April, 1861; the average value of such issues to be determined at the time of the demand made for the payment of the certificate, on or about the 20th day of June, 1861, and interest from that date to this time.

2. If the jury believe, from the evidence, that the parties to the certificate made a special agreement in regard to the Illinois currency, and knew it was depreciated at the time of deposit, and that the depositor assumed the risk of the further depreciation by leaving his funds on deposit with the defendant, after a further depreciation, then plaintiff can only recover the value of the funds deposited at the time of the demand.

3. If the jury believe, from the evidence, that the deposit was made in Illinois bank notes, and that it was to be paid back in like funds, and that the notes deposited were depreciated below their par value, or worth below their face in specie, then the plaintiff can only recover the real value of such funds as were deposited at the time of a demand made upon the certificate.

Which the court refused to give ; to which refusal of the court the defendant excepted.

Errors assigned :

1. In admitting the certificate of deposit, offered by plaintiff below, in evidence under the money counts.

2. In giving improper instructions to the jury for the plaintiff.

3. In refusing to give proper instructions to the jury, asked by the defendant.

4. In refusing to grant defendant's motion for a new trial.

5. In rendering judgment on the verdict for the plaintiff, when, by the law, it should have been for the defendant.

HOYNE, McCAGG & FULLER, for Appellant.

M. W. FULLER, for Appellee.

WALKER, J. The certificate of deposit, upon which this suit was instituted, was for Illinois currency, and payable in like funds. This presents the question, as to the meaning of the term "Illinois currency." Is it the paper of the free banks of Illinois, or any bank paper used for, and answering all the purposes of the constitutional coin of the country? Is it that bank paper used in buying and selling the various commodities of trade, and in the payment of debts by the business community specified? The legal definition is, "bank notes, or other paper money, issued by authority, and which are continually passing, as and for coin." Wharton's Law Lex. 236. This is also the commercial as well as the popular meaning of the term. Then, what is "Illinois currency"? Does it designate the paper money, without reference to the banks by which it is issued, and which passes in this State in lieu of coin, or the paper of the banks chartered in this State?

When it is remembered, that the currency or circulating medium of the country is not of uniform value, and that bank paper at par with coin, in one locality, has a depreciated value at a different point, it would seem that the term was designed not to specify the paper of a particular class of banks, but rather a particular description of bank paper. A character of paper which was current, and not a denomination of bills without reference to their currency. If this was not the sense in which the term was used by the parties, it seems to us they would have employed altogether different language. It would have been Illinois bank paper. The term currency, however, must control, and whether it be paper of Illinois, or other banks, it must be current, such as passes in the locality in the place of coin.

It was held, that a bill, payable in New York currency, was met with any funds current in the city, whether on New York, New England, or other banks. *Judah* v. *Hains*, 19 J. R. 144. This seems to be commercial usage, the general understanding of community, and the legal effect of such a contract. If depreciated bank bills were offered in payment, whether issued by Illinois banks or not, the tender could not be said to have been in currency, and yet the certificate calls for currency. It calls for and must be discharged in currency, or in current coin. It cannot be paid in broken bank paper, no difference what it is called. The certificate says that currency was received, and the same was to be paid, and nothing else will discharge the certificate.

The judgment of the court below is affirmed.

*Separate Opinion by* CATON, C. J. There is one question

arising in all these bank cases, in the determination of which I cannot agree with the majority of the court, and I shall content myself by a statement of my views in this case alone, without incumbering the record with them in each case. I think that it was competent to show by parol proof on the trial, that the terms "currency," or "Illinois currency," to pay which, in terms, the promises were made, had a local signification well understood by all parties, and that they did not mean gold or silver, or their equivalent. The broad and comprehensive meaning of the word currency, is such as to show, that it may with propriety be used in reference to things of different values, when applied to a medium of exchange of property. Its primary signification is a passing or flowing—something which flows along or passes from hand to hand. When used in reference to a circulating medium, or a representative of values in trade or commerce, it does not necessarily mean cash, but is equally applicable to anything which is used as a circulating medium, and is generally accepted in trade as a representative of values of property. Among many of the native tribes on the head waters of the Niger, a certain kind of shells, called *kurdi*, is used as such currency or circulating medium ordinarily, about 2500 of which represent the value of a dollar; among others, strips of cotton cloth are used as currency, and among many, both are in use, as well as money. 3 Barth. 128. Now a promise made there, to pay so many dollars in currency, would mean so many dollars in shells or cloth, the actual value of which, as compared with specie, it would be competent to show, if we would enforce the contract as the parties understood it. So long as it is possible that the parties to the contract meant that something of less or even more value than money, should be paid, simple justice between man and man requires that they should be permitted to show that fact. They made an agreement which both parties understood. And shall the court make another agreement for them, different from their own, and enforce that agreement, in violation of what both parties intended? By doing this, we wrest the meaning of the parties from the contract, and enforce an obligation which they never contemplated. The very fact that the promise was made to pay "Illinois currency" shows that something else was intended than cash, else the promise would have been simply for so many dollars. This qualifying expression was put in for a purpose—to carry out some definite understanding which the parties had. It means some particular kind of circulating medium or funds, which the proof shows was well understood in the community, in view of which

Chicago Fire and Marine Insurance Co. *v.* Keiron.

understanding the parties made their agreement.  It is the duty of the courts, and such is the dictate of common justice, to carry out the intention of parties and to enforce contracts as they are actually made.  If " Illinois currency" could have but one meaning, if it could only mean so many dollars in gold or silver, as would be the expression of so many dollars in the current coin of the United States, the case would be different, but here is an expression used, which might have a local signification, the very form and use of which shows that they did mean by its use something different from cash, and I think that sheer justice, as well as the well-settled rules of law, require that the parties should be allowed to show, what was universally understood in the community by the use of such term, as the sense in which it was used in this promise. The necessity of this rule of law is most forcibly illustrated by these very cases, and the history of the times in which these contracts were made, of which no man who lived in Illinois can affect to be ignorant.  We all know that at the time our only circulating medium was bank bills issued upon the security of government bonds, which, in consequence of the rebellion in the South, had depreciated in value, and that these bank notes had correspondingly depreciated in value, to the extent of ten, twenty and thirty per cent. below a specie standard. This " Illinois currency" constituting, as it did, the currency of the country, everything was bought and sold in reference to this depreciated value of this currency, and promises were made to pay in this currency ; no one intending or expecting that they would be paid in specie.  We all know that this term was not understood by any one to mean cash, but a circulating medium which was in everybody's hands, of a less value than cash. The witnesses who testify on this subject, state only what is in the distinct remembrance of all.  And now shall we shut our eyes against this light and knowledge, and insist, against the facts as we know them to exist, not only from the legal testimony, but from our own knowledge, and say that the parties intended this promise should be performed by the payment of cash instead of Illinois currency, which was of less value than cash?  Is that the perfection of reason which is the boast of the law?  I cannot so appreciate it.  The value of the thing which the party promised to pay at the time the promise should have been performed, was the true measure of damages.  This was the ruling of the court below, and this was the extent of the plaintiff's recovery.  I concur in the affirmance of the judgment, but cannot approve of the principles laid down in the principal opinion.

*Judgment affirmed.*